ETHEL M. PALMER, joined by her husband, EDWARD M. PALMER, and EDWARD M. PALMER v. FLORA MAE GREENE and S. A. GREENE, her husband, and S. A. GREENE, CATHERINE OWNBY and C. O. OWNBY, her husband, and C. O. OWNBY, and CITY OF ST. PETERSBURG, FLORIDA, a Municipal Corporation.

31 So. (2nd) 706
May 9, 1947
Rehearing July 15, 1947.
Rehearing denied September 11, 1947.

January Term, 1947
En Banc

*L. D. Martin,* for Appellants.

*John C. Blocker* for *Flora Mae Greene* and *S. A. Greene* and *Forrest Hoffman,* for *Catherine Ownby* and *C. O. Ownby,* appellees. *Lewis B. Wray* and *Harry Q. Young,* for City of St. Petersburg, appellees.

CHAPMAN, J.:

The appellees, S. A. Greene and Flora Mae Greene, filed their bill of complaint in the Circuit Court of Pinellas County,

Florida, to quiet title against Edward M. Palmer and wife, Ethel M. Palmer (a) to described land situated in the north part of Lot 6; (b) to described land situated in northeast corner of Lot 7 and a strip off the west side of Lot 8, all of Block 2 of Joseph Puig's Subdivision (now) situated in the town of St. Petersburg. The Greenes acquired title to Lots 6 and 7 during the year 1944; the Ownbys obtained their interest in Lot 8 in 1939, while the Palmers obtained title to Lot 5 in 1936. The tap root of the controversy centers around the exact boundary line dividing Lot 5 on the south from Lots 6 and 7 on the north, and on the east of Lot 5 from Lot 8 on the west.

The appellants contend that they have, with their predecessors, been continuously for twenty years or more in the open, hostile and undisputed possession, under fence or substantial enclosure, of tracts (a), (b) and (c) *supra,* and have during the period cultivated the same and planted it with fruit trees. Evidence appearing in the record tends to support this adverse possession, as shown by the testimony of the witness Fred H. Roberts to the effect that he helped to construct the fence on the west side forty-five years ago and saw the fence on the south at its present location some thirty-three years ago. Other witnesses place the boundary of these tracts at their present locations.

Counsel for appellees contend that appellants, the Palmers, failed to prove that they, with their predecessors in title, have been in the actual, adverse and continuous possession of tracts (a), (b) and (c) for a period of seven years under a claim of title exclusive of any other right but not founded upon a written instrument or judgment or a decree prior to the passage of Chapter 19254, Acts of 1939, Laws of Florida (Sections 95.18 and 95.19, Fla. Stats. 1941 (FSA). Pertinent part of the final decree is viz:

". . . and the Court further finds that the said Palmers at no time since Chapter 19,254, supra, became a law, viz: June 5, 1939, have returned the property in dispute by proper legal description to the assessor of Pinellas County, Florida, and have subsequently during each year paid all taxes thereto

and thereafter levied and assessed against the property involved in this suit by the State of Florida and said County and by the City of St. Petersburg, Florida, before such taxes became delinquent. In fact, the Court has found that the said Palmers have failed to pay any taxes whatsoever on the disputed strips of lands involved in this suit."

The record discloses that the appellants in 1936 received deed to Lot 5 of Block 2 of Joseph Puig's Subdivision (with other lands) and immediately went into possession thereof, and this possession is shown to have been continuous and uninterrupted from 1936 until the filing of this suit October 25, 1945. Appearing in the transcript are copies of tax receipts describing Lot 5 *supra,* with other lands, issued by the City of St. Petersburg and the County of Pinellas to the Palmers on Lot 5 of Block 2 for the years 1936 to 1945, inclusive. It is true that taxes for these years were paid on the property described as Lot 5 of Block 2 of Joseph Puig's Subdivision. It is quite true also that the appellants did not make a return by an appropriate legal description to the City of St. Petersburg and Pinellas County for taxation purposes of the disputed strips identified as (a), (b) and (c), but the record discloses that they paid taxes on the property described as Lot 5 of Block 2 of Joseph Puig's Subdivision. It is our view that the provisions of Sections 95.18 and 95.19, Fla. Stats. 1941 (FSA) are inapplicable to the disputed strips of land involved in this suit. The ruling to the contrary by the lower court is therefore erroneous.

The plaintiffs below frankly admit that they have never been in possession of the disputed tracts since obtaining title in 1944 to Lots 6 and 7 of Block 2 of Joseph Puig's Subdivision. We do not overlook our former rulings to the effect that it is not necessary for a plaintiff to allege in his bill of complaint in a suit to quiet title that the plaintiff is in possession of the property. McDaniel v. McElvy, 91 Fla. 770, 108 So. 820, 51 A. L. R. 731; Conway v. Wilson, 132 Fla. 404, 181 So. 385; Griffin v. Bolen, 149 Fla. 377, 5 So. (2nd) 690, in suits to quiet title the burden of proof rests on the plaintiff to show with clearness, accuracy and certainty not only validity of his own title but the invalidity or inferiority of the

defendant's title or claim, unless such invalidity or inferiority be admitted by the defendant. McDaniel v. McElvy, *supra.*

Our several statutes conferring the power and authority on courts of equity to make and enter orders and decrees quieting title to lands were never intended or designed by the Legislature to deprive a litigant of a right of trial by jury, as provided for in our fundamental law. Section 3 of the Declaration of Rights. These statutes cannot be construed to mean that it was the intention of the Legislature by their enactment to abolish the common law action of ejectment. It is still the law that where the common law remedy by ejectment is clear and adequate the parties have the right to have their actions, claims and demands settled or tried by a jury. Hughes v. Hannah, 39 Fla. 365, 22 So. 613; Trustees of Internal Imp. Fund v. Gleason, 39 Fla. 771, 23 So. 539; Briles v. Bradford, 54 Fla. 501, 44 So. 937; Sawyer v. Gustason, 96 Fla. 5, 118 So. 57, and similar cases. It is our conclusion that the remedy of the plaintiffs below is the common law action of ejectment.

The decree appealed from is reversed with directions for the entry of an appropriate order transferring the case at bar to the law side of the court—there to be heard and disposed of according to law.

It is so ordered.

TERRELL, ADAMS and BARNS, JJ., and MILLARD B. SMITH, Associate Justice, concur.

THOMAS, C. J., agrees to the judgment.

BUFORD, J., concurs specially.

BUFORD, J., concurring specially:

It is my view that no equity jurisdiction is shown by the bill of complaint and that the court below was without power to enter an order except one dismissing the bill of complaint or one transferring the cause to the law side of the docket for disposition under issues in an ejectment proceeding.

As the issues could not be determined in a Chancery Court, it is not proper for us to express any views thereon in this

proceeding. What we might say could amount to no more than obiter dicta.

I, therefore, concur only in the judgment.

BARNS, J.:

The facts seem to be that the Palmers (appellants-defendants) bought Lot 5 in July 1936, and were placed in possession of a piece of land which in fact extended over a portion of Lots 6 and 7 owned by the Greenes or their predecessors in title and also over a portion of Lot 8 owned by the Ownbys or their predecessors in title.

The plaintiffs-Greenes being out of possession of the north 29 feet of the land to which they held the legal paper title, brought a bill to quiet title against the Palmers who were in possession. The Palmers answered and admitted possession but stated that they had acquired title by adverse possession having taken possession of the portion of Lots 6 and 7 under their deed to Lot 5, such possession being under a claim of ownership and for more than seven years.

After having answered plaintiffs' bill the Palmers filed a cross-bill to quiet title against the Greenes and also the Ownbys. The Palmers were in possession and based their claim against the holders of the legal paper title upon seven years adverse possession under a claim of right. They had no color of title except their deed to Lot 5. Their cross-bill related to portions of Lots 6, 7 and 8, and the defendants to the cross-bill were the owners of the legal paper title.

The evidence establishes that Palmers' predecessors in title to Lot 5 were actually in possession of the land in dispute but fails to establish facts sufficient to start the commencement of the seven years adverse possession. The possession of the land in dispute by those through whom the Palmers claim was consistent with a claim of Lot 5 according to its true boundaries.

The character of possession by the Palmers may have been adequate to support a decree in their favor on the cross-bill but this leaves unsettled the period of adverse possession and also the statutory condition precedent prescribed by Chapter 19,254, Acts of 1939.

The Chancellor found that the Palmers had failed to prove that they and their predecessors in title have been in actual, continued occupation for seven years of the premises involved in this suit under a claim of title exclusive of any other right but not founded upon a written instrument or a judgment or a decree *prior* to the passage of Chapter 19,254, Laws of Florida, Acts of 1939, same being Section 95.18 and Section 95.19, Florida Statutes 1941.

The Legislature in 1939 amended the law as now contained in F. S. Section 95.18 F.S.A. by adding the words of said Section which we italicize to-wit:

95.18 Real actions; adverse possession without color of title requiremnts

"Where it shall appear that there has been an actual continued occupation for seven years of premises under a claim of title exclusive of any other right, but not founded upon a written instrument, or a judgment or decree, the premises so actually occupied, and no other, shall be deemed to have been held adversely; provided that during the period of seven years aforesaid the person so claiming adverse possession without color of title shall have within a year after entering into possession made a return of said property by proper legal description to the assessor of the county wherein situated *and has subsequently, during each year paid all taxes theretofore or thereafter levied and assessed* against the same. . . ."

Sec. 95.18 F.S.A.

The Palmers claim title to portions of Lots 6, 7 and 8 only by adverse possession without color of title, i.e., only under a claim of right. Their "claim of right" commences in July, 1936, when they received a deed to Lot 5. Their predecessors in title had possession of the premises for many years prior but title by adverse possession in them has not been established by the evidence. Possession is presumed to be in subordination to the legal title, F. S. 95.13, F. S. A. which legal title is held by the Greenes and Ownbys-appellees.

Under the law as enacted in 1939, and italicized above, the Palmers were likely excused from performing those acts specified to be done within a year after going into possession since

they had then been in possession for three years at the time of the enactment. The Act was intended to have prospective application only. However, a provision of the quoted section (supra) exacted of the Palmers that they pay all taxes on the land to which they seek to establish adverse possession during each year—which they have *not*. Such being an essential it appears that such years cannot be considered in calculating the adverse possession of the Palmers.

It not having been made to appear that the Chancellor erred, the decree is affirmed.

TERRELL, BUFORD and ADAMS, JJ., concur.

THOMAS, C. J., CHAIRMAN, J., and SMITH, Associate Justice, adhere to former opinion of May 9, 1947.