SHANNON, Judge.
The appellant, plaintiff below, filed a suit to quiet title, and it appeals from a final adverse decree of the chancellor.
In its bill of complaint the plaintiff alleged that it, or its predecessors in title, held title to certain described real estate lying in Lake County, Florida, and that the defendants had acquired real estate adjoining the plaintiff’s by virtue of a deed in 1954. Further the complaint alleged that its predecessors had established a citrus grove prior to the year 1929 and that it or its predecessors in title maintained actual, open, visible, notorious, continuous and hostile adverse possession of all of said citrus grove including that portion which is under dispute. The defendants, by their answer, set out that their predecessors in title owned the land in dispute by virtue of a deed executed by the County of Lake dated March 7, 1949, ensuing from a tax fore *583 closure on the property, which suit was filed on January 16, 1945, and final decree was entered on the first day of June, 1945.
The area in dispute in this litigation comprises 1.26 acres and, from the hill of complaint, is a part of the grove of the plaintiff. To put it succinctly the plaintiff claims the real estate involved by reason of adverse possession, in that they or their predecessors had maintained a citrus grove since some date prior to 1929. The defendants on the other hand, by their answer, maintain that by tax foreclosure suit, and the plaintiff having not returned the land for taxation since 1939, they have obtained title to and the right to possession of all of the land in Lot 88, which was the real estate they bought. A survey made about the time the suit was filed reveals that the land in question is a portion of Lot 88.
On a motion to strike a portion of defendants’ answer the chancellor denied the motion and entered his final decree which included as follows:
“That for more than seven years prior to 1939 the plaintiff’s predecessor in title maintained actual, open, visible, notorious, continuous and hostile adverse possession of all of said citrus grove, including the portion thereof last above described, which, in fact occupies a portion of Tract or Lot 88 of Eustis Meadows.
“From the foregoing agreed facts, the Court is of the opinion and finds the law to be that the claim of the plaintiff to the portion of Tract or Lot 88 of Eustis Meadows more particularly described above in Paragraph 3, by virtue of adverse possession prior to the year 1939, was cut off and extinguished as a result of the prosecution of the in rem foreclosure proceedings by the County of Lake in the year 1945 ; that plaintiff, by its payment of taxes assessed against its land as described in Paragraph 1 above, in no wise paid thereby the taxes assessed against that portion of Tract or Lot 88 of Eustis Meadows more particularly described in Paragraph 3 above, and that notwithstanding its occupation and possession of said strip of land by the planting and cultivation of a citrus grove, did not comply with the statutory requisites of adverse possession without color of title subsequent to 1939.”
The statute referred to in the above quotation is § 95.18, Fla.Stat., 1957, F.S.A., which reads as follows:
“Where it shall appear that there had been an actual continued occupation for seven years of premises under a claim of title exclusive of any other right, but not founded upon a written instrument, or a judgment or decree, the premises so actually occupied, and no other, shall be deemed to have been held adversely; provided that during the period of seven years aforesaid the person so claiming adverse possession without color of title shall have within a year after entering into possession made a return of said property by proper legal description to the assessor of the county wherein situated and has subsequently, during each year paid all taxes theretofore or thereafter levied and assessed against the same * * * by the state and county and by city or town, if such property be situated within any incorporated city or town, before such taxes become delinquent.”
It will be seen from the chancellor’s decree that the plaintiff, or its predecessors, had acquired title by adverse possession by more than seven years’ possession prior to 1939, the year that the requirements of F.S. 95.18, F.S.A., became effective. It was also quite true that there is no allegation in the complaint that the plaintiff had made a return to the tax assessor and paid taxes specifically, by description, upon the land in dispute. It is also quite true that we have to assume that the tax foreclosure suit in Lake County was valid and that the defendants, or their predecessors *584 in title, had acquired a valid deed from the county. The plaintiff in its brief and in argument before us relied upon the cases of Euse v. Gibbs, Fla.1951, 49 So.2d 843; Palm Orange Groves v. Yelvington, Fla. 1949, 41 So.2d 883; and also the California case of Price v. De Reyes, 1911, 161 Cal. 484, 119 P. 893. These were cases in which title was obtained through the doctrine of acquiescence about which we will comment later in this opinion.
In Palmer v. Greene, 1947, 159 Fla. 174, 31 So.2d 706, 709, the defendant, and his predecessors, had been continuously for twenty years or more in the open, hostile and undisputed possession, under fence or substantial enclosure, of the real estate involved in the dispute. The defendant was claiming under the title based upon the adverse possession prior to the year 1939, but they had failed to return the same to the tax assessor and pay the taxes thereon as required by Sections 95.18 and 95.19, Fla. Stat.1957, F.S.A. The lower court also found that they had obtained title to Lots 2 and 5 of Joseph Puig’s Subdivision in 1936, while the suit was not filed until 1945. The lower court held for the plaintiff, the Supreme Court reversing on original hearing, but on rehearing the case was affirmed. In affirming the court said:
“The evidence establishes that Palm-ers’ predecessors in title to lot 5 were actually in possession of the land in dispute but fails to establish facts sufficient to start the commencement of the seven years adverse possession. The possession of the land in dispute by those through whom the Palmers claim was consistent with a claim of lot 5 according to its true boundaries.
* * * * *
“(2,3) Under the law as enacted in 1939, and italicized above, the Palmers were likely excused from performing those acts specified to be done within a year after going into possession since they had then been in possession for three years at the time of the enactment. The Act was intended to have prospective application only. However, a provision of the quoted section (supra) exacted of the Palmers that they pay all taxes on the land to which they seek to establish adverse possession during each year — which they have not. Such being an essential it appears that such years cannot be considered in calculating the. adverse possession of the Palmers.”
Subsequent to the decision in Palmer v. Greene, and in commenting upon that case, Earl F. Warford, Esq. in 1 University of Florida Law Review, page 291, has this to say:
“The applicability of this statute might be questioned, since the defendants had been in possession before the enactment of the statute. The session law from which the present statute evolved, however, clearly indicates that the legislature intended the statute to include adverse possession begun but not completed before the statute became effective. The court, supported by this statutory background, and in accordance with a former decision, held the statute applicable. This conclusion was reached in another state under a similar statute. The practical effect of this statute is virtually to prevent the acquisition of title through adverse possession without color of title to a strip of land lying beyond the true boundary of the adjoining owner though occupied and claimed by him, when such occupation is made through mistake or ignorance as to the true line. The reason for this result is that a return for taxes is made only on the land as described in the deed of the adverse possessor and not according to his actual possession, as required by statute.
“This case presents the first instance in this state in which the provision requiring the payment of taxes *585 had been applied to the mistaken boundary situation. Although the application of this statute is undoubtedly sound in the ordinary adverse possession situation, giving the true owner notice that an adverse possessor had arrived upon the scene, it proves harsh to the possessor, who, although intending to claim adversely if necessary, is mistaken as to the true boundary. Under the existing law in this state, the court’s application of the statutory tax requirements to the mistaken boundary situation was sound; but because of the harshness in this type situation, it might be desirable for the legislature to enact a proviso, similar to one in force in another state, that this statute should not be applicable to mistaken boundary situations.”
The next case that we wish to comment on is Palm Orange Groves v. Yelvington, supra. In the Yelvington case the appellee had received a deed from Volusia County pursuant to tax foreclosure proceedings under Chapter 194, Fla.Stat.1941, F.S.A. It is true that the court in the Yelvington case also decided on the principle of adverse possession, together with acquiescence. However, if the case is studied carefully, it can be seen that the rationale of the case is one of acquiescence and the fact that the disputed land was abandoned for all purposes from 1888 to 1945 and therefore, the case treated it as being lost, and' so that case is no authority as urged by the appellant for the present one.
While discussing the Yelvington case the court gives a good description of acquiescence in stating [41 So.2d 885]:
“ ‘Where the exact location of a boundary line is not definitely known, a dispute involving the boundary line must be determined by looking to the conduct of the parties with reference thereto. Thus long acquiescence by the owners of adjoining lands in the location of the dividing line between their lands may, in effect, establish such a line, if the acquiescence be for a period of time equal to that fixed by the statute of limitations.’ 6 Thompson on Real Property, 495 citing Lid-don v. Hodnett, 22 Fla. 442; Acosta v. Gingles, 70 Fla. 13, 69 So. 717.”
Euse v. Gibbs, supra [49 So.2d 843], was actually a decision based on acquiescence, as will be seen from the first headnote which says:
“In suit involving boundary line between contiguous tracts, substantial evidence sustained findings that when conveyances of tracts were made by grantors to defendant, parties agreed that fence line should constitute true line between parties and that after defendant executed a deed in 1931, he remained in actual possession of the strip of land lying between fence line and true line and that the line agreed upon by the parties became established as the true line by acquiescence and recognition.”
In the Euse case Mr. Justice Sebring had this to say:
“ * * * Neither were the provisions of section 196.06, Florida Statutes 1941,. F.S.A. applicable, for the suit by the plaintiff against the defendant was not, in legal effect, a suit against a person in adverse possession as against one claiming the right of possession by virtue of the issuance of a tax deed creating a hew and independent title, but was a suit by a tax deed claimant against a person lawfully in possession of his own property which he had derived by deed and agreement fixing the boundary line of such property- — property which, in legal effect, was not covered by the description in the tax deed.”
Following in line after Euse v. Gibbs, supra, is the case of Holley v. May, Fla. 1954, 75 So.2d 696, 698, in which the opin *586 ion is again by Mr. Justice Sebring'and he said:
“(6, 7) We have the view that the chancellor was also correct in concluding that the allegations of the answer were not sufficient, as a matter of law, to make out the defenses of title by acquiescence or by adverse possession. In respect to the first, it is essential that there be some dispute as to the boundary in question, implying a cognizance on the part of adjoining owners that the proper boundary line is in doubt — an element entirely absent from the case at bar since the parties were admittedly unaware of the encroachment of the building on plaintiff’s property until a survey was made at the instance of the plaintiff long after the original transaction, and there is no contention that there was any 'acquiescence’ to the encroachment after this discovery was made. Shaw v. Williams,. Fla., SO So.2d 125; McRae Land & Timber Co. v. Ziegler, Fla., 65 So.2d 876, and cases therein cited. :
“(8) As to the sufficiency of the defense of adverse possession, it does not appear from the answer that there has been compliance with the statute requiring return for taxation, by proper legal description, of property adversely possessed under the circumstances present. Section 95.19, Florida Statutes 1951, F.S.A.; Salls v. Martin, 156 Fla. 624, 24 So.2d 41; Palmer v. Greene, 159 Fla. 174, 31 So.2d 706. In view of the preceding conclusion as to lack of ‘acquiescence,’ the case is clearly distinguishable from Euse v. Gibbs, Fla., 49 So.2d 843, where the ruling of the court with reference to the aforementioned statute was expressly predicated on the fact that the boundary had been established by acquiescence, thereby settling the issue of title .to the disputed -strip, and as between those parties the' return of .the property for taxation by lot number amounted' to a return of all prop- ■ erty encompassed within the agreed ■ boundaries.”
For a very good recent survey of the mistaken boundary situation in general, and in Florida in particular, see the Validation of Erroneously Located Boundaries by Adverse Possession and Related Doctrines, by James W. Day, Professor of Law at the University of Florida, 10 U. of Fla. Law Review 245.
In deciding that the plaintiff did not acquire title by acquiescence and that it has to claim, if at all, on the adverse possession which had ripened into title prior to 1939, we can say, as did the author in the Law Review article, supra:
“ * * * it proves harsh to the possessor who, although intending to claim adversely if necessary, is mistaken as to the true boundary.”
Affirmed.
ALLEN, Acting Chief Judge, and MORROW, R. O., Associate Judge, concur.