109 So.2d 413 (1959)
Albert E. BLACKBURN and Mary M. Blackburn, Appellants,
v.
FLORIDA WEST COAST LAND & DEVELOPMENT COMPANY et al., Appellees.
No. 529.
District Court of Appeal of Florida. Second District.
February 20, 1959.
Rehearing Denied March 16, 1959.
*414 Clyde H. Wilson, Sarasota, and O.K. Reaves, of Mabry, Reaves, Carlton, Fields & Ward, Tampa, for appellants.
Earl D. Farr, of Farr & Farr, Punta Gorda, and W.T. Harrison, Jr., of Williams, Parker, Harrison & Dietz, Sarasota, for appellees.
SHANNON, Judge.
This case involves a disputed boundary line between townships 39 south, range 20 east, and 39 south, range 21 east, with plaintiff-appellants contending that the original government survey placed the range line along a fence that had held their cattle for a number of years longer than the prescriptive period, and appellees contending that the true original range line was some 500 feet west of this fence, as located by their surveyor. In addition to their contention that the fence was on the range line appellants advance three theories which would vest title to the land in them up to the fence regardless of the location of the range line. These theories are based on estoppel, acquiescence and adverse possession.
As to appellants' argument that the range line in dispute is actually conterminous with the old fence line, it can only be said that a great deal of conflicting evidence was before the chancellor, and his finding is supported by that submitted on behalf of the appellees, including convincing expert testimony.
Proceeding then from the premise that the range line has been properly located *415 by appellees' surveyor, it will be seen that applying the theory of estoppel in favor of appellants would create a title in them at variance with the record title, by giving them that strip of land in township 39 south, range 21 east, between the true range line and the fence, to which land appellees hold paper title. This is not permitted under the rule that title may not be created by estoppel. As stated in City of Naples v. Morris, Fla. 1954, 71 So.2d 905:
"It is well settled that the principles of estoppel may be applied in defense of a title, but not to establish one. Kerivan v. Fogal, 156 Fla. 92, 22 So.2d 584, 586, citing Stone v. Culver, 286 Mich. 263, 282 N.W. 142, 119 A.L.R. 512, as follows:
"`The purpose of the rule that title may not be created by estoppel is to prevent the uncertainty of titles which would arise if * * * parol evidence of an estoppel could be introduced to show that the paper title is not what it appears to be. The rule is not applicable * * * (where) the estoppel serves to defend and not to destroy the apparent paper title.'"
Turning to appellants' next argument, that they have acquired title to the property in question by the acquiescence of the appellees and their predecessors, we find several statements from other jurisdictions quoted which would seem to support their position. However, it has been observed, "* * * that a consideration of the relevant holdings in the jurisdictions of the United States establishes that the doctrine of acquiescence is in a chaotic condition." See the Validation of Erroneously Located Boundaries by Adverse Possession and Related Doctrines, 10 U. of Fla. L.R. 245, 264. And regardless of the diverse situations in which the doctrine has been applied in other states, our Supreme Court has clearly imposed the prerequisite that there be some dispute, or uncertainty as to the location of the line recognized by both parties before a boundary may be established by acquiescence in Florida, an element entirely lacking in the instant case. The rule is enunciated in Holley v. May, Fla. 1954, 75 So.2d 696, 698:
"We have the view that the chancellor was also correct in concluding that the allegations of the answer were not sufficient, as a matter of law, to make out the defenses of title by acquiescence or by adverse possession. In respect to the first, it is essential that there be some dispute as to the boundary in question, implying a cognizance on the part of adjoining owners that the proper boundary line is in doubt  an element entirely absent from the case at bar since the parties were admittedly unaware of the encroachment of the building on plaintiff's property until a survey was made at the instance of the plaintiff long after the original transaction, and there is no contention that there was any `acquiescence' to the encroachment after this discovery was made. Shaw v. Williams, Fla., 50 So.2d 125; McRae Land & Timber Co. v. Ziegler, Fla., 65 So.2d 876, and cases therein cited."
Appellants' final contention relates to the five miles of disputed strip north of the highway, which was actually fenced in with land to which they held good title. While it is admitted that no taxes were paid upon land lying east of the range line, so as to bring appellants within the purview of F.S. § 95.18, F.S.A., dealing with adverse possession without color of title, it is contended that F.S. § 95.17(2), F.S.A., defining possession and occupation under color of title, brings them within section 95.16, and they are therefore adverse possessors with color of title. In other words, they argue their good title is color of title, and appellees' property enclosed with theirs by the same fence partakes of this color of title by virtue of 95.17(2). F.S. § 95.17, F.S.A., reads as follows:
"Definition of possession and occupation under color of title. For the purpose *416 of constituting an adverse possession by any person claiming a title founded upon a written instrument, or a judgment or decree, land shall be deemed to have been possessed and occupied in any of the following cases:
"(1) Where it has been usually cultivated or improved; or
"(2) Where it has been protected by a substantial enclosure. All contiguous land protected by such substantial enclosure shall be deemed to be premises included within the written instrument, judgment, or decree, within the purview of § 95.16; or * * *".
The result of appellants' construction of the statutes relating to adverse possession would seem to circumvent the legislative intent in this area. Under the present state of the law a diligent owner has notice that an adverse possessor has arrived, by reason of the recording requirement under F.S. § 95.16, F.S.A., with color of title, and the payment of taxes required under § 95.18, where there is no color of title. If appellants' contention was sustained it would mean a property owner could encroach upon adjacent land, and acquire it by adverse possession without recording any new instrument or paying any taxes on it.
It is further noted that the very meaning of "color of title", being only apparent, or a semblance of title is antithetical to actual title, implying an absence thereof. Although most cases dealing with color of title are concerned with how defective an instrument can still be color of title, rather than how valid an instrument, there are nevertheless a number of cases holding that color of title is the appearance without the reality, or that a valid instrument does not constitute color of title. Roe v. Doe, ex dem. Tennessee Coal, Iron & Ry. Co., 1909, 162 Ala. 151, 50 So. 230; Kelly v. Kelly, 1943, 293 Ky. 42, 168 S.W.2d 339, 148 A.L.R. 331; A.D. Graham & Co. v. Pennsylvania Turnpike Commission, 1943, 347 Pa. 622, 33 A.2d 22; Bailey v. Jarvis, 1948, 212 Ark. 675, 208 S.W.2d 13; First-Citizens Bank & Trust Co. v. Parker, 1952, 235 N.C. 326, 69 S.E.2d 841. See also Thompson on Real Property, Section 2550.
Finally it is observed that the chancellor in the present case found that there was no adverse possession in the first instance, in that the fence was originally erected by a lessee, prior to appellants' ownership, as a line of convenience, and was subsequently maintained by both adjoining landowners out of considerations of convenience and economy, and that therefore there was no showing of a hostile claim.
Affirmed.
KANNER, C.J., and ALLEN, J., concur.