287 So.2d 37 (1973)
John E. MEYER and L. Leona Meyer, His Wife, Petitioners,
v.
Neil F. LAW, Jr., and Lucille W. Law, His Wife, Respondents.
No. 42788.
Supreme Court of Florida.
July 5, 1973.
On Rehearing December 12, 1973.
*38 William L. Penrose, of Harris, Barrett & Dew, St. Petersburg, for petitioners.
Law Offices of Joseph E. Johnston, Jr., Brooksville, for respondents.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, Second District, reported at 265 So.2d 737. Our jurisdiction is based on conflict between the decision sought to be reviewed and Blackburn v. Florida West Coast Land and Development Company,[1] Van Meter v. Kelsey,[2] Holley v. May,[3] and Palmer v. Greene.[4]
Petitioners owned land contiguous to the property of respondents. Relying upon an incorrect survey, respondents built and maintained a fence for twenty-five years, enclosing a portion of petitioners' land, in the belief that it was part of their own. Both petitioners and respondents had deeds of record reflecting the true boundary; both parties returned their lands for taxes according to the record titles, and paid taxes only on their respective properties as shown by such record titles. Respondents apparently thought the fence was on the true line, and petitioners took no action for legal determination to the contrary.
The District Court held that the respondents acquired valid title to the enclosed lands of petitioners under "color of title", although there was neither a decree nor a written instrument of any kind in the public records to show color of title in respondents, and although there had been no return of the encroached lands for taxes or payment thereof by respondents.
The foregoing cases, cited for conflict, clearly hold that without color of title or payment of taxes, as prescribed by Sections 95.16, 95.17, 95.18, and 95.19, Florida Statutes,[5] and without seven years of actual, *39 adverse, open, hostile, and continuous enclosure or cultivation, or adverse claim cannot ripen into a valid legal title.
In Palmer v. Greene, supra, decided by this court in 1947, the appellants sought to perfect title to a part of appellees' land, contiguous to their own, by adverse possession. Appellants had cultivated the land from 1936, through the time the case arose, and until final disposition of the case in 1947. This Court held that, since 1939, either return and payment of taxes or color of title to the land in question, coupled with seven years of "adverse" possession, was required. Although the appellants had record title to their adjoining property, there was no claim or finding that the paper title to their own property constituted color of title to the land held adversely. In Holley v. May, supra, decided by this *40 Court in 1954, appellants claimed title by adverse possession to a portion of land, of a contiguous owner, on which their house encroached. Although they, like the appellants in Palmer, and the respondents in the instant case, had record title to the adjoining property, this Court held that title by adverse possession had not been legally established because there was no color of title or return and payment of taxes for seven years.
In light of these cases, we now turn to the essence of the issue upon which this Court must reverse the District Court in the instant case. Relying upon cases cited in the opinion, and other legal writings, both the Circuit Court and the District Court concluded that subsection (2) of Section 95.17 should be construed to mean that when a person claims certain specific lands under color of title, such claimant may enclose or cultivate the properties of contiguous owners for seven years, without returning or paying taxes, and without having paper title to the land upon which he has encroached, and thus perfect his claims to the property of adjoining owners, who return and pay their taxes, and who have ownership of record by deed, decree, or other written instrument. In this fashion, all owners of real property described in the statute would be subject to losing parts of their yards, farms, ranches, or other lands, to contiguous owners who happen to plant flowers, vegetables, or fences thereon. Surely, the Legislature did not intend such a result.
Reading the foregoing subsection in pari materia with the other quoted sections, we think its proper construction is that persons who claim land adversely under a paper title relating to a certain area, and who fence in or cultivate an area beyond that which is described in the paper title, but who do not pay any taxes on the additional area, can secure good title by adverse possession only to the portion of land described by the deed, decree, or other written instrument of record. We believe that, in enacting the foregoing subsection, the Legislature intended to provide that, where one has color of title to a larger area than is fenced or cultivated, and he pays no taxes on any of the land described in the title, he may acquire title by adverse possession only to that portion of land shown on the paper title which he actually fences or cultivates. It requires little imagination to realize that one who holds an uncertain or doubtful color of title, by deed, decree, or other recorded written instrument, to a large piece of property which may likely be claimed by others, might wisely fence, cultivate, or pay taxes on a portion of the same, in order to avoid controversy, for seven years, and then reach out in like manner for another piece. Obviously, in such circumstances, only the part occupied adversely could be included, regardless of the lands shown on the color of title, or the taxes paid.
In the case before us, we hold that the respondents' color of title was limited to the property shown in the public records, and no color of title extended from that ownership to the contiguous lands of the petitioners.
In Florida, there are only two ways to acquire land by adverse possession. First, without color of title, the claimant must show seven years of open, continuous, actual possession, hostile to all who would challenge such possession, must both pay all taxes for the seven year period, returning said land for taxes during the first year of occupation, and enclose or cultivate said lands for the seven year period. Second, with color of title, the claimant must show he entered into possession of the premises under a claim based upon a written instrument of conveyance of the premises in question, or deed, or judgment of a competent court, and there has been a continued occupation and possession of the premises, as defined by Section 95.17, Florida Statutes, F.S.A. (and, of course, including the above criteria of openness, etc.), for a period of seven years. It should be noted that Section 95.16, Florida Statutes, F.S.A., provides that adverse possession *41 commencing after December 31, 1945, shall not be deemed to be adverse possession under color of title unless the instrument purporting to convey the premises is recorded. One who enters into possession of realty is presumed to do so subordinately to the legal titleholder, and not adversely thereto. One who claims adversely has the burden of overcoming this presumption.
The concept of adverse possession is an ancient and, perhaps, somewhat outdated one. It stems from a time when an ever-increasing use of land was to be, and was, encouraged. Today, however, faced, as we are, with problems of unchecked over-development, depletion of precious natural resources, and pollution of our environment, the policy reasons that once supported the idea of adverse possession may well be succumbing to new priorities. A man who owns some virgin land, who refrains from despoiling that land, even to the extent of erecting a fence to mark its boundaries, and who makes no greater use of that land than an occasional rejuvenating walk in the woods, can hardly be faulted in today's increasingly "modern" world. Public policy and stability of our society, therefore, require strict compliance with the appropriate statutes by those seeking ownership through adverse possession. In this case, respondents have not demonstrated sufficient compliance with the requirements of the law to perfect their claim by adverse possession.
Accordingly, the opinion of the District Court is quashed and the cause remanded for further proceedings consistent herewith.
It is so ordered.
ROBERTS, McCAIN and DEKLE, JJ., concur.
ADKINS, J., dissents with opinion.
CARLTON, C.J., and ERVIN, J., dissent and concur with ADKINS, J.
ADKINS, Justice (dissenting):
Respectfully, I must dissent. To reach the conclusion set forth in the majority opinion requires that one totally ignore the language of Fla. Stat. § 95.17(2), F.S.A., which provides:
"All contiguous land protected by such substantial enclosure shall be deemed to be premises included within the written instrument, judgment, or decree, within the purview of § 95.16."
Fla. Stat. § 95.16, F.S.A., deals with adverse possession under color of title, so that, to be given any meaning at all, the language of Fla. Stat. § 95.17(2), F.S.A., must be interpreted as an extension of the applicability of the color of title doctrine. As set forth in the majority opinion, holding property adversely under color of title negates the necessity of filing a legal description of the land with the tax assessor and paying taxes on the land thus possessed.
The majority opinion would limit the application of the doctrine to those situations wherein the land sought to be claimed is actually described in some form of conveyance, which is the traditional test for whether or not land is held under color of title. 1 Fla.Jur., Adverse Possession, § 9.
In 1939, the Legislature revised the adverse possession statutes of the State so that the requirement of payment of taxes in order to claim adversely without color of title (Fla. Stat. §§ 95.18, 95.19, F.S.A.) was to be applied as well to adverse possession with color of title. Laws of Florida (1939), Ch. 19253. At that time, Fla. Stat. § 95.17(2), F.S.A., did not include the exceptional language quoted above. It was under this state of the law that this Court decided Palmer v. Greene, 159 Fla. 174, 31 So.2d 706 (1947), upon which the majority opinion so heavily relies. Thus, the present language of Fla. Stat. § 95.17(2), F.S.A., distinguishes Palmer v. Greene, supra, from the case sub judice in that the controlling statute has been materially changed.
*42 The alteration of Fla. Stat. § 95.17(2), F.S.A., took place in 1945, when the Legislature added the language quoted above and removed the requirement of the payment of taxes in adverse possession proceedings involving color of title. The Legislation, found at Laws of Florida (1945), Ch. 22897, was entitled, in part, "Redefining Adverse Possession Under Color of Title and Prescribing what shall be Deemed to Constitute Possession and Occupation Under Color of Title."
Thus, the title encompasses both a change in the basic definition of what constitutes color of title and a change in the requirements of possession under color of title. The exceptional language of Fla. Stat. § 95.17(2), F.S.A., accomplished the first change, and the removal of the requirement of payment of taxes accomplished the second.
The majority opinion in the case sub judice would negate the change wrought by the Legislature in 1945 whereby the definition of color of title was enlarged to include lands which, in good faith, were properly fenced under the authority of title to contiguous land which the landowner mistakenly believed included the lands fenced. In fact, the majority opinion does not even seek to explain away the added language, but chooses merely to ignore it and to limit adverse possession under color of title to the traditional definition in disregard of it.
The second case relied upon by the majority (Holley v. May, 75 So.2d 696 (Fla. 1954)), deals, not with a fence or other "substantial enclosure" such as is required by Fla. Stat. § 95.17(2), F.S.A., and does not, therefore, entertain the question before this Court, which is  stated in simple terms  will this Court choose to apply the statutory language of Fla. Stat. § 95.17(2), F.S.A., to the facts of the case sub judice, or will this Court apply part of the statutory language, choosing to ignore that portion with which it does not agree?
Three of the District Courts of Appeal of Florida have spoken on the issue which is before this Court in the case sub judice. The first case, in point of time, was Blackburn v. Florida West Coast Land & Development Co., 109 So.2d 413 (Fla.App.2d, 1959), which presented the rationale adopted by the majority in the case sub judice. In the decision here under review, the District Court of Appeal, Second District, sought to recede from the Blackburn decision so as to bring itself in line with the decisions of its sister districts.
In Kiser v. Howard, 133 So.2d 746 (Fla.App. 1st, 1961), the District Court of Appeal, First District, rejected Blackburn, holding that Blackburn, inferentially, attempted to repeal by judicial decree that portion of Fla. Stat., § 95.17(2), F.S.A., which is applicable to the case sub judice. The District Court, therefore, held that land situated such as in the case sub judice was held by adverse possession under color of title. The District Court of Appeal, Fourth District, then relied on Kiser v. Howard, supra, to adopt a similar view in Seaboard Air Line Railroad Co. v. California Chemical Co., 210 So.2d 757 (Fla.App. 4th, 1968). As noted above, the District Court of Appeal, Second District, has attempted to make the voices of the District Courts of Appeal speak in harmony, but the majority opinion strikes a discordant note as it seeks to return to the rationale of the unanimously rejected Blackburn doctrine.
The majority opinion seeks to enjoin the taking of land from a goodly and natureloving man whose boundaries are unmarked by fences. Such a goal is indeed laudatory, but would require that the doctrine of adverse possession be totally abolished in this State  whether or not it was joined by the payment of taxes. Such a result would also work to the detriment of one such as the respondent in the case sub judice, a man who bought a section of land and diligently seeking to act properly, obtained a survey of his land. Relying, in good faith, on that survey, he placed a fence at what he honestly thought were the boundaries of his land. For seven long years, this man was allowed to believe that *43 he was openly and notoriously tilling, improving, and fencing his own land. Under the rationale of the majority opinion, he was actually toiling for the benefit of his neighbor. Under the rationale of the statute, he acquired title by adverse possession.
Neither neighbor is actually in the wrong; and, the best result would be that neither had to suffer. However, this is not possible within the limitations of land, and the Legislature has determined that, under the facts of the case sub judice, the man who had, through a good faith mistake, protected, enclosed and improved the land in question for seven years without complaint of his neighbor should have the benefit of his toils. The majority opinion gives the land to the man who did not bother to check his boundaries for seven years to determine whether or not his land has been invaded.
This is not to suggest that the intentional fencing of surrounding land in an attempt to grab that which is not rightfully the property of the one so reaching would dictate a similar result. The exception to the color of title doctrine provided by Fla. Stat. § 95.17(2), F.S.A., is such that it could apply only to good faith mistakes, because, otherwise, the adverse possessor could not be claiming the land under the good title which he holds to the neighboring land. The burden of proving a good faith error would be on the adverse possessor. However, under the facts of the case sub judice, especially the reliance on a survey for the setting of a boundary, I feel that the burden has been met.
Because I feel that it is the duty of this Court to apply all of an applicable statute to the facts of a case, unless some portion of the statute violates a provision of the Constitution of Florida or of the United States, I would affirm the decision below because this is the result dictated by a simple application of the statutory language to the facts.
I dissent to the majority opinion.
CARLTON, C.J., and ERVIN, J., concur.
PER CURIAM:

ORDER ON REHEARING
This Court, having granted rehearing on the decision filed in this case on the 5th day of July, 1973, and having heard further argument of counsel, and reconsidering the record and briefs of counsel, has determined that the original decision filed in this cause is correct, and we, therefore, adhere to same.
It is so ordered.
ROBERTS, BOYD, McCAIN and DEKLE, JJ., concur.
CARLTON, C.J., and ERVIN and ADKINS, JJ., dissent.
NOTES
[1] 109 So.2d 413 (Fla.App.2d 1959).
[2] 91 So.2d 327 (Fla. 1956).
[3] 75 So.2d 696 (Fla. 1954).
[4] 159 Fla. 174, 31 So.2d 706 (1947).
[5] Section 95.16, Florida Statutes, 1971, provides: "Whenever it appears that the occupant, or those under whom he claims, entered into possession of premises under claim of title exclusive of any other right, founding such claim upon a written instrument as being a conveyance of the premises in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the premises included in such instrument, decree, or judgment for seven years, the premises so included shall be deemed to have been held adversely, except that, where the premises so included consist of a tract divided into lots, the possession of one lot shall not be deemed a possession of any other lot of the same tract; provided, that adverse possession commencing after December 31, 1945, shall not be deemed to be adverse possession under color of title unless and until the instrument of conveyance of the premises in question upon which such claim of title is founded shall be duly recorded in the office of the clerk of the circuit court of the county in which the premises are situated."

Section 95.17, Florida Statutes, 1971, provides: "For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument, or a judgment or decree, land shall be deemed to have been possessed and occupied in any of the following cases:
(1) Where it has been usually cultivated or improved; or
(2) Where it has been protected by a substantial enclosure. All contiguous land protected by such substantial enclosure shall be deemed to be premises included within the written instrument, judgment, or decree, within the purview of § 95.16; or
(3) Where [although not enclosed] it has been used for the supply of fuel, or of fencing timber for the purpose of husbandry, or for the ordinary use of the occupant; or
(4) Where a known lot or single farm has been partly improved, the portion of such farm or lot which may have been left not cleared or not enclosed according to the usual course and custom of the adjoining county shall be deemed to have been occupied for the same length of time as the part improved or cultivated."
Section 95.18, Florida Statutes, 1971, provides: "Where it shall appear that there has been an actual continued occupation for seven years of premises under a claim of title exclusive of any other right, but not founded upon a written instrument, or a judgment or decree, the premises so actually occupied, and no other, shall be deemed to have been held adversely; provided that during the period of seven years aforesaid the person so claiming adverse possession without color of title shall have within a year after entering into possession made a return of said properly by proper legal description to the assessor of the county wherein situated and has subsequently, during each year paid all taxes theretofore or thereafter levied and assessed against the same and matured installments of special improvement liens theretofore or thereafter levied and assessed against the same by the state and county and by city or town, if such property be situated within any incorporated city or town, before such taxes become delinquent."
Section 95.19, Florida Statutes, 1971, provides: "For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only:
(1) Where it has been protected by substantial enclosure; or,
(2) Where it has been usually cultivated or improved;
(3) Provided, however, no such land shall be deemed to have been held adversely under the provisions of subsections (1) and (2) above unless within one year after the entry by such adverse owner, he has returned the said property by proper legal description to the assessor of the county wherein situated, and has subsequently, during each year, paid all taxes theretofore or thereafter levied and assessed against the same and matured installments of special improvement liens theretofore or thereafter levied and assessed against the same by the state and county and by any city or town, if such property be situated within any incorporated city or town, before such taxes become delinquent, except that provision (3) shall not be applicable to suits pending on June 5, 1939." (Emphasis supplied.)