369 So.2d 662 (1979)
Sara Jane SEDDON et al., Appellants,
v.
Fred M. HARPSTER and Doris Harpster, His Wife, Appellees.
No. 78-616.
District Court of Appeal of Florida, Second District.
April 11, 1979.
*663 Sanford A. Minkoff of Ford, Cauthen & Robuck, Tavares, for appellants.
Robert F. Vason, Jr. of Huebsch, Bowen & Vason, Eustis, for appellees.
SCHEB, Judge.
Defendant Sara Jane Seddon appeals a final judgment holding that she was wrongfully occupying land belonging to the plaintiffs Harpster. Seddon attacks the judgment on several grounds. We have examined her arguments in some detail, and reject each of them. However, we think the trial court's rejection of her defense of adverse possession merits discussion.
In 1964 Seddon's parents purchased a twenty-acre tract of rural land in Lake County described as follows:
West 1/2 of the NW 1/4 of the NE 1/4 of Section 19, Township 17 South, Range 27 East in Lake County, Florida recorded in O.R. Book 259, p. 317.
The new owners promptly had their land surveyed. The survey showed their western boundary, i.e., the north-south midsection line, to be a county-maintained clay road. Accordingly, the elder Seddons erected a fence adjacent to the clay road. Eventually defendant Seddon succeeded her parents as owner of the property.
The Harpsters purchased their property in 1971. According to their legal description the eastern boundary of their land abutted the western boundary of Seddon's property. Thus the north-south midsection line was the common boundary between the two properties. Mr. Harpster, who is a surveyor, had doubts even before he and his wife purchased their property as to whether the north-south midsection line ran along the clay road. He suspected that the true north-south midsection line was somewhere east of the road.
In November 1975 the Harpsters brought an ejectment action against Seddon, alleging that she was wrongfully occupying the eastern portion of their property. Seddon answered, asserting several affirmative defenses, and counterclaimed. She contended, inter alia, that even if the north-south midsection line was somewhere east of the clay road she nevertheless owned up to the road through adverse possession. See §§ 95.16-.18, Fla. Stat. (1975).
The cause proceeded to nonjury trial in September 1977. Both sides produced expert testimony as to the proper location of the north-south midsection line, as well as testimony relating to the various defenses raised by Seddon.
The final judgment in favor of the Harpsters was rendered on October 10, 1977. The court accepted the survey conducted by the Harpsters' expert, Wayne Dukes, which placed the north-south midsection line some 400 feet east of the clay road. Though the expert testimony was conflicting, we find that the trial court did not err in accepting Dukes' survey. The *664 trial court also rejected each of Seddon's defenses, and found that she was wrongfully occupying the disputed property between the north-south midsection line and the clay road.
As noted, Seddon argues that she was the owner of the disputed property through adverse possession. She first contends that the evidence was sufficient to show that she adversely possessed the disputed property "without color of title" as described in Section 95.18, Florida Statutes (1975). However, this statute requires a showing that the claimant has "made a return of the property by proper legal description to the property appraiser of the county where it is located within 1 year after entering into possession and has subsequently paid all taxes ... levied against the property by the state, county, and municipality." Seddon's legal description, upon which she paid taxes, did not encompass the disputed property. Therefore, the trial court properly rejected this defense. See Peters v. Straley, 306 So.2d 588 (Fla.2d DCA 1975).
The trial court's rejection of Seddon's defense of adverse possession "under color of title" presents a more difficult problem. In rejecting this defense, the court said:
It is perhaps this defense that comes closest to merit inasmuch as the disputed property is, in fact, under fence with the property of the Defendant Seddon thereby giving rise to a claim of adverse possession pursuant to Florida Statute 95.16(2)(b) which states that when the occupant entered into possession of real property under a claim of title founded upon a written instrument (which the Seddons did) and has for seven years been in continued possession of the property included in the instrument (which the Seddons have) the property is held adversely.
Under the present day reading of Section 95.16, Florida Statutes, there can be no doubt that the Defendant has met every requirement of acquiring title to property by adverse possession save and except for one. The Defendant has not held such property according to the provisions of Section 95.16, Florida Statutes for a period of seven years. Such section of the Florida Statutes only became law on January 1, 1975. Prior to that, Section 95.16 and 95.17 as interpreted by the Supreme Court of the State of Florida in Meyer v. Law, 287 So.2d 37 was the law.
To fully comprehend the trial court's holding, a review of the law in this area is necessary.
In Meyer v. Law, 287 So.2d 37 (Fla. 1973) the supreme court had occasion to interpret Sections 95.16 and .17, Florida Statutes (1971), which dealt with adverse possession under color of title. At that time Section 95.16 read:
Whenever it appears that the occupant, or those under whom he claims, entered into possession of premises under claim of title exclusive of any other right, founding such claim upon a written instrument as being a conveyance of the premises in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the premises included in such instrument, decree, or judgment for seven years, the premises so included shall be deemed to have been held adversely, except that, where the premises so included consist of a tract divided into lots, the possession of one lot shall not be deemed a possession of any other lot of the same tract; provided, that adverse possession commencing after December 31, 1945, shall not be deemed to be adverse possession under color of title unless and until the instrument of conveyance of the premises in question upon which such claim of title is founded shall be duly recorded in the office of the clerk of the circuit court of the county in which the premises are situated. (Emphasis added.)
Section 95.17, entitled "Definition of possession and occupation under color of title," then read in pertinent part:
For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument, or a judgment or decree, land shall be deemed to have been possessed and occupied in any of the following cases:

*665 (1) Where it has been usually cultivated or improved; or
(2) Where it has been protected by a substantial enclosure. All contiguous land protected by such substantial enclosure shall be deemed to be premises included within the written instrument, judgment, or decree, within the purview of § 95.16. ... (Emphasis added.)
Writing for the four-justice majority in Meyer v. Law, Justice Boyd said:
Reading the foregoing subsection [95.17(2)] in pari materia with the other quoted sections, we think its proper construction is that persons who claim land adversely under a paper title relating to a certain area, and who fence in or cultivate an area beyond that which is described in the paper title, but who do not pay any taxes on the additional area, can secure good title by adverse possession only to the portion of land described by the deed, decree, or other written instrument of record. We believe that, in enacting the foregoing subsection [95.17(2)], the Legislature intended to provide that, where one has color of title to a larger area than is fenced or cultivated, and he pays no taxes on any of the land described in the title, he may acquire title by adverse possession only to that portion of [the] land shown on the paper title which he actually fences or cultivates. (Emphasis added.)
287 So.2d at 40. So under this holding a person could claim property by adverse possession under color of title only where he had "paper" title correctly describing the disputed property. In the instant case the survey accepted by the trial court showed that Seddon's legal description did not encompass the disputed land. Therefore, under Meyer v. Law Seddon did not have paper title to the disputed land, and she could not have established adverse possession under color of title.
In 1974 the legislature enacted Chapter 74-382, Sections 11 and 12, Laws of Florida, amending the statutes dealing with adverse possession under color of title. Section 95.17 was eliminated, but its language was changed slightly and incorporated into Section 95.16. Section 95.16 now reads in pertinent part as follows:
(1) When the occupant, or those under whom he claims, entered into possession of real property under a claim of title exclusive of any other right, founding the claim on a written instrument as being a conveyance of the property, or on a decree or judgment, and has for seven years been in continued possession of the property included in the instrument, decree, or judgment, the property is held adversely. If the property is divided into lots, the possession of one lot shall not be deemed a possession of any other lot of the same tract. Adverse possession commencing after December 31, 1945 shall not be deemed adverse possession under color of title until the instrument upon which the claim of title is founded is recorded in the office of the clerk of the circuit court of the county where the property is located.
(2) For the purpose of this section, property is deemed possessed in any of the following cases:
(a) When it has been usually cultivated or improved.
(b) When it has been protected by a substantial enclosure. All contiguous land protected by the enclosure shall be property included within the written instrument, judgment, or decree, within the purview of this section. ... (Emphasis added.)
The new version of Section 95.16 eliminates some of the statutory language relied upon by the supreme court in Meyer v. Law, and adds new language. It appears that under this newer version of the statute it is not necessary to have paper title accurately describing the disputed land in order to establish adverse possession under color of title, so long as the disputed property is "protected by a substantial enclosure" and the other conditions for establishing adverse possession are met.
The effective date of Chapter 74-382 was January 1, 1975. As mentioned previously, the Harpsters brought their ejectment action *666 in November 1975. Thus the amendments were effective at that time. However, the trial court found that the seven years of continual possession necessary to establish adverse possession under color of title could not begin to run until the effective date of Chapter 74-382. The court reasoned that Chapter 74-382 worked a substantial change on the law of adverse possession under color of title, and could not be given retroactive effect since the legislature had not clearly expressed that it so intended. See Foley v. Morris, 339 So.2d 215 (Fla. 1976).
Seddon argues that Chapter 74-382 did not substantially change the law of adverse possession. She contends that the Meyer v. Law decision construed Sections 95.16 and .17 contrary to the legislative intent with which these statutes were enacted, and that Chapter 74-382 was meant to clarify  not change  the law of adverse possession under color of title. Therefore, Seddon argues, since Chapter 74-382 did not change the law, it would not be a retroactive application to allow the seven years of continual possession to begin before January 1, 1975.
We cannot agree with Seddon's analysis. We preface our discussion with the proposition that an amendment to a statute altering substantive rights should be given prospective application only, unless the legislature has clearly expressed its intent to the contrary. Bell v. Isthmian Lines, Inc., 363 F. Supp. 156 (M.D.Fla. 1973); Quality Lime Products, Inc. v. Acme Paving Co., 134 So.2d 42 (Fla.2d DCA 1961); see also Wichita Falls & S.R. Co. v. Lindley, 143 S.W.2d 428 (Tex. App. 1940); 1A C. Sands, Statutes and Statutory Construction § 22.36 (4th ed. 1972). Chapter 74-382 does not manifest any legislative intent that it be applied retroactively; therefore, if Chapter 74-382 altered substantive rights it must be given prospective effect only.
Another important proposition necessary for the resolution of this issue is that an interpretation of a statute by the highest court of a state is generally regarded as an integral part of the statute. Guaranty Trust Co. of New York v. Blodgett, 287 U.S. 509, 53 S.Ct. 244, 77 L.Ed. 463 (1933); Ray Schools-Chicago, Inc. v. Cummins, 12 Ill.2d 376, 146 N.E.2d 42 (1957); 73 Am.Jur.2d Statutes § 143 (2d ed. 1974). Thus Meyer v. Law must be considered the definitive interpretation of Sections 95.16 and .17 prior to the enactment of Chapter 74-382.
Sections 95.16 and .17 as interpreted by Meyer v. Law required a claimant to have paper title to the disputed property in order to establish adverse possession under color of title, even if the disputed property was "protected by a substantial enclosure"; however, under Section 95.16 as amended by Chapter 74-382, it appears that paper title under such circumstances is no longer necessary. So before the effective date of Chapter 74-382 Seddon could not have had a claim to the disputed property through adverse possession under color of title, but after that date she could have had such a claim. This is certainly an alteration of substantive rights. Therefore, we must agree with the trial court that Seddon's seven years of continual possession could not have begun until January 1, 1975. See generally Palmer v. Greene, 159 Fla. 174, 31 So.2d 706 (1947); Edwards v. Hardin Properties, Inc., 313 So.2d 82 (Fla.2d DCA 1975).
Under the decision we feel mandated to make, no claimant could establish adverse possession under color of title until 1982 without having paper title to the disputed property, even if the disputed property had been fenced-in for many years prior to 1975. It is significant, we think, that the legislature altered Sections 95.16 and .17 at its next session after the Meyer v. Law decision. Since this was the first time these statutes had been amended since 1945, it implies that the Meyer v. Law interpretation of the statutes was perhaps contrary to what the legislature intended. In light of the foregoing, we deem it necessary to certify the following question to the supreme court, pursuant to Article V, Section 3(b)(3), Florida Constitution, as being of great public interest:
DID THE SEVEN-YEAR PERIOD OF CONTINUAL POSSESSION NECESSARY *667 TO ESTABLISH ADVERSE POSSESSION UNDER COLOR OF TITLE BEGIN ON THE EFFECTIVE DATE OF CHAPTER 74-382, OR COULD IT HAVE BEGUN BEFORE THAT TIME WHERE:
1. THE CLAIMANT'S PAPER TITLE DID NOT PROPERLY DESCRIBE THE DISPUTED PROPERTY; YET,
2. THE DISPUTED PROPERTY HAD "BEEN PROTECTED BY A SUBSTANTIAL ENCLOSURE" FOR MORE THAN SEVEN YEARS PRIOR TO 1975?
HOBSON, Acting C.J., and BOARDMAN, J., concur.