403 So.2d 409 (1981)
Sara Jane SEDDON, et al., Petitioners,
v.
Fred HARPSTER and Doris Harpster, His Wife, et al., Respondents.
No. 56771.
Supreme Court of Florida.
July 30, 1981.
Rehearing Denied September 30, 1981.
*410 Sanford A. Minkoff of the Law Offices of Christopher C. Ford, Tavares, for petitioners.
Robert F. Vason, Jr., Mount Dora, for respondents.
ADKINS, Acting Chief Justice.
We have before us a decision of the Second District Court of Appeal in which the following question was certified to this Court pursuant to article V, section 3(b)(4), Florida Constitution (1972):
Did the seven-year period of continual possession necessary to establish adverse possession under color of title begin on the effective date of Chapter 74-382, or could it have begun before that time where:
1. The claimant's paper title did not properly describe the disputed property; yet,
2. The disputed property had "been protected by a substantial enclosure" for more than seven years prior to 1975?
Seddon v. Harpster, 369 So.2d 662, 666-667 (Fla. 2d DCA 1979).
This is basically a boundary dispute in which the plaintiff's ejectment action succeeded in the face of a defense of adverse possession. We shall refer to the parties by name in an attempt to avoid unnecessary confusion.
In 1964 Seddon's parents, her predecessors in interest, bought twenty acres of rural land in Lake County. A survey of the tract at that time showed the western boundary, i.e., the north-south midsection line, to be a county-maintained clay road. Relying on this, the Seddons erected a fence adjacent to the clay road.
In 1971 the Harpsters purchased property which, according to the legal description, abutted the western boundary of the Seddon land. This made the north-south midsection line the common boundary between the two tracts. In 1975 the Harpsters brought an ejectment action against Seddon, claiming she was wrongfully occupying the eastern portion of their property. The Harpsters contended that the true north-south midsection line ran east of the clay road. Seddon answered, inter alia, that even if the true boundary was east of the road, she owned the property up to the fence adjacent to the road by virtue of adverse possession.
Initially we note that the district court correctly affirmed the trial court's rejection of Seddon's claim of adverse possession "without color of title." § 95.18, Fla. Stat. (1975). This form of adverse possession may arise in the absence of a written instrument, judgment or decree describing the disputed property, but only if the claimant has paid taxes on that property. Seddon had paid taxes based on the legal description in her deed which used the correct north-south midsection line as a guide. The disputed property beyond that line and up to the fence would not have been covered. Failure to pay taxes necessarily defeats a claim of adverse possession "without color of title." § 95.18, Fla. Stat. (1975). The trial court, sitting without a jury, accepted the Harpster's expert witness' testimony that the correct north-south midsection line ran about 400 feet east of the clay road. In rendering final judgment for the Harpsters, the court noted that:
Under the present day reading of Section 95.16, Florida Statutes, there can be no doubt that the Defendant [Seddon] has met every requirement of acquiring title to property by adverse possession save and except for one. The Defendant *411 [Seddon] has not held such property according to the provisions of Section 95.16, Florida Statutes for a period of seven years. Such section of the Florida Statutes only became law on January 1, 1975. Prior to that, Section 95.16 and 95.17 as interpreted by the Supreme Court of the State of Florida in Meyer v. Law, 287 So.2d 37 was the law.
369 So.2d at 664 (emphasis in original). The trial court refused to apply section 95.16, Florida Statutes (Supp. 1974), retroactively because it allegedly worked a substantive change from the prior law as interpreted in Meyer v. Law, 287 So.2d 37 (Fla. 1973). The district court affirmed.
Meyer v. Law dealt with the statutory predecessors to the present statute. These sections read in pertinent part:
Whenever it appears that the occupant, or those under whom he claims, entered into possession of premises under claim of title exclusive of any other right, founding such claim upon a written instrument as being a conveyance of the premises in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the premises included in such instrument, decree, or judgment for seven years, the premises so included shall be deemed to have been held adversely ...
Section 95.16, Fla. Stat. (1973). (emphasis supplied).
For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument, or a judgment or decree, land shall be deemed to have been possessed and occupied in any of the following cases: ...
(2) Where it has been protected by a substantial enclosure. All contiguous land protected by such substantial enclosure shall be deemed to be premises included within the written instrument, judgment, or decree, within the purview of § 95.16 ...
Section 95.17(2), Fla. Stat. (1973) (emphasis supplied). In Meyer, the majority interpreted the foregoing statutes to mean that adverse possession under color of title could only arise where the claimant had "paper" title accurately describing the disputed property. Under Meyer, Seddon could not have acquired the land by adverse possession under color of title because at the time from which she claims possession, her deed's legal description did not include the area between the true boundary and the fence.
Chapter 74-382, sections 11 and 12, Laws of Florida, was enacted at the legislative session immediately following the Meyer decision. By combining the two preceding sections, the new statute clearly states that one does not have to have paper title correctly describing the disputed property as long as that area is contiguous to the described land and "protected by a substantial enclosure." § 95.16, Fla. Stat. (Supp. 1974).
The crucial issue, then, is whether chapter 74-382 may be applied retroactively in favor of Seddon. The presumption is against retroactive application in the absence of an express manifestation of legislative intent to the contrary. Foley v. Morris, 339 So.2d 215 (Fla. 1976). There is no such expression in chapter 74-382, sections 11 and 12, Laws of Florida. Seddon's argument that these provisions only clarified existing law and so may be applied retroactively must fail. The legislature is presumed to be aware of existing law and the judicial construction of former laws on the subjects of its enactments. Foley v. State, 50 So.2d 179 (Fla. 1951). It is also presumed that when the legislature amends a statute, it intends to accord the statute a meaning different from that accorded it before the amendment. Reino v. State, 352 So.2d 853 (Fla. 1977). We can find no basis to afford retroactive application to chapter 74-382, sections 11, 12, Laws of Florida.
Our response to the question certified must therefore be that the seven-year period of continual possession necessary to establish adverse possession under color of title begins on the effective date of chapter 74-382, Laws of Florida, i.e., January 1, 1975. The effective date is unaffected by the fact that although claimant's paper title did not properly describe the disputed property, *412 that area had been protected by a substantial enclosure for more than seven years prior to 1975.
The decision of the district court of appeal is approved.
It is so ordered.
OVERTON, ALDERMAN and McDONALD, JJ., concur.
BOYD, J., concurs in part and dissents in part with an opinion.
BOYD, Justice, concurring in part and dissenting in part.
I concur in the result insofar as the decision holds that appellant is not entitled to the disputed property by reason of adverse possession, but I disagree with the majority's pronouncement that the statutory changes made by chapter 74-382, Laws of Florida, affected this Court's decision in Meyer v. Law, 287 So.2d 37 (Fla. 1973).
Sections 11 and 12 of chapter 74-382 amended sections 95.16 and 95.17, Florida Statutes (1973). The two sections were then consolidated when the next codification was published. § 95.16, Fla. Stat. (1974 Supp.). Section 95.16 provides:
(1) When the occupant, or those under whom he claims, entered into possession of real property under a claim of title exclusive of any other right, founding the claim on a written instrument as being a conveyance of the property, or on a decree or judgment, and has for 7 years been in continued possession of the property included in the instrument, decree, or judgment, the property is held adversely. If the property is divided into lots, the possession of one lot shall not be deemed a possession of any other lot of the same tract. Adverse possession commencing after December 31, 1945 shall not be deemed adverse possession under color of title until the instrument upon which the claim of title is founded is recorded in the office of the clerk of the circuit court of the county where the property is located.
(2) For the purpose of this section, property is deemed possessed in any of the following cases:
(a) When it has been usually cultivated or improved.
(b) When it has been protected by a substantial enclosure. All contiguous land protected by the enclosure shall be property included within the written instrument, judgment, or decree, within the purview of this section.
(c) When, although not enclosed, it has been used for the supply of fuel or fencing timber for husbandry or for the ordinary use of the occupant.
(d) When a known lot or single farm has been partly improved, the part that has not been cleared or enclosed according to the usual custom of the county is [to be considered as] occupied for the same [length of] time as the part improved or cultivated.
An examination of sections 95.16 and 95.17, Florida Statutes (1973), together with the changes made therein by chapter 74-382 reveals that the substance of the law was not changed, but only the style. The changes consisted of substituting the term "property" for "premises" and deleting unnecessary language. There is nothing in the changes to indicate that the legislature intended to overrule the holding of Meyer v. Law.
Since chapter 74-382 did not make any substantive changes, the question of its retroactive application is not before the Court and so cannot provide the basis for jurisdiction as a certified question. However, the district court held that "it is not necessary to have paper title accurately describing the disputed land in order to establish adverse possession under color of title, so long as the disputed property is `protected by a substantial enclosure' and the other conditions for establishing adverse possession are met." Seddon v. Harpster, 369 So.2d 662, 665 (Fla. 2d DCA 1979). This holding is in direct conflict with Meyer v. Law, and provides us with an alternative basis for jurisdiction. Art. V, § 3(b)(3), Fla. Const.
In Meyer v. Law we stated that "persons who claim land adversely under a paper *413 title relating to a certain area, and who fence in or cultivate an area beyond that which is described in the paper title, but who do not pay any taxes on the additional area, can secure good title by adverse possession only to the portion of land described by the deed, decree, or other written instrument of record." 287 So.2d at 40. This construction of section 95.16 assures all property owners that there will be some notice of adverse claims in the public record. Without such notice property owners would have to survey their property every seven years to protect themselves from the possibility of encroaching neighbors adversely possessing their land. Construing the statute to allow for adverse claims without any public notice would deprive landowners of their property without due process of law.
The concept of due process of law in adverse possession cases is not entirely new. In the past courts have presumed landowners had notice of adverse claims from the fact of mere possession. This presumption encouraged and facilitated claims to abandoned property when there were vast amounts of unproductive and worthless property in the state. Presently real estate in Florida is extremely valuable as an investment regardless of its present use. There are many landowners who, though they may not be using their land, have no intention of abandoning it. Since due process is an evolving concept, it should be applied in a manner to reflect these changes in our society.
In Meyer v. Law we established the new standard for providing sufficient notice. We held that claims based on color of title must be noticed by some written instrument of record. We noted that claims not based on color of title must be noticed by the payment of taxes. In either instance landowners are able to check public records to ascertain whether someone is adversely claiming their property. Any interpretation of the statute not requiring public notice of adverse possession claims would be unconstitutional.
I realize that what I'm saying flies in the face of hundreds of years of precedent. The law of adverse possession in this country developed from the common and statutory law of England. As far back as a century ago, the courts in this country held that a person could adversely possess mistakenly occupied land that was enclosed by an artificial or natural barrier. See H. Buswell, The Statute of Limitations and Adverse Possession (1889); R. Tyler, A Treatise on the Remedy of Ejectment and the Law of Adverse Possession in the United States (1874). This law developed when much of the continental United States was unsurveyed wilderness. At that time the courts adopted a public policy that as much land should be put to use as possible. The courts imbued a presumption of ownership on the persons who actually possessed the property.
Our society today has radically changed from our society of a hundred years ago. We have become so urbanized that the trend is toward adopting a public policy of preserving land in its natural state. Art. II, § 7, Fla. Const. It is now much more common for persons to own land without actually possessing it. Now the payment of taxes is presumptively a more reliable indicia of ownership than possession. When an owner pays taxes on his land, he is publishing to the world, "This is my land."
Because of these fundamental changes in our society, I believe that any interpretation of section 95.16 which would bar a record title holder's claim to property that is claimed to be adversely possessed without notice in the public records would be unconstitutional. Such a statute would operate to deprive a record title holder of his property without due process in violation of the Fifth Amendment to the United States Constitution and article I, section 9 of the Florida Constitution.
Such an interpretation of the statute would also violate several other state constitutional provisions. Article I, section 2, guarantees all natural persons the right "to acquire, possess and protect property... ." This section guarantees a person the right *414 to protect his property which implies the right to protect his property interest in a court of law. A similar provision, article I, section 21, guarantees persons the right of access to the courts. A person is denied these rights when he is unable to discern from public records that his property interests are being challenged. Finally, article X, section 6 prohibits the taking of property for a private purpose. Allowing one person to fence in neighboring lands to which he has no paper title and claim them as his own is tantamount to authorizing the taking of private property for a private purpose. All of these state and federal constitutional provisions protecting private property interests have been in existence for a long time, just as the concept of adverse possession. The reason they have not been relied upon before in striking down adverse possession statutes is that our society in the past has given more credence to property interest claims based on possession than on paper title. With modern technology and computerized transactions our society is now more capable of accurately establishing legal interest to property through paper title than through possession. Therefore these constitutional provisions should now be interpreted in favor of those whose claims to property are asserted through transactions which are of public record.
Since Seddon's deed did not purport to convey the disputed portion of land, and since she has not paid taxes on that land, she has not fulfilled the requirements of adverse possession under color of title pursuant to section 95.16, Florida Statutes (1974 Supp.), as I interpret that statute. I would therefore quash the district court's decision and remand this case with directions that the portions of the trial court's order inconsistent with this opinion be vacated.