570 So.2d 1327 (1990)
Jo Evelyn TURNER, Appellant,
v.
John T. VALENTINE and Maxine M. Valentine, His Wife, Appellees.
No. 89-01179.
District Court of Appeal of Florida, Second District.
June 22, 1990.
Rehearing Denied July 27, 1990.
*1328 George J. Felos of Felos & Felos, Dunedin, for appellant.
C.A. Sullivan of Macfarland, Gould, Lyons & Sullivan, P.A., Clearwater, for appellees.
PER CURIAM.
This is a boundary dispute between two neighbors over a narrow strip of land between them. The appellees sued in 1987 to establish ownership by adverse possession under color of title to this strip of land which forms the rear part of their backyard and which is separated from the appellant's backyard by a creek. The creek caused the boundary dispute because, long before the parties purchased their respective properties, the creek changed course and physically relocated from its original position as shown on the recorded subdivision plat.[*] The trial court entered final judgment in favor of the appellees.
The issue we must decide is whether the trial court correctly extended the law of adverse possession as interpreted in Seddon v. Harpster, 403 So.2d 409 (Fla. 1981), which dealt with subsection 2(b) of section 95.16, Florida Statutes (1987), to this case where the appellees were claiming adverse possession under subsection 2(c). We think the law was correctly interpreted and so affirm the trial court.
The disputed strip of land is contiguous to the land described in the appellees' deed. That description is:
The East 151.39 feet of Lot 12, FAIR OAKS SUBDIVISION (also known as that part of Lot 12, lying east of the center line of Allen's Creek, FAIR OAKS SUBDIVISION), according to the Map or Plat thereof, as recorded in Plat Book 41, page 34, Public Records of Pinellas County, Florida.
When the appellees took possession of their property, they mistakenly, but in good faith, believed the creek, as shown on the plat, formed the boundary of their lot. The problem arose because the creek has moved to its present-day location and has not been in its platted position since soon after the plat was recorded in 1956. The effect of this relocation was to enlarge the appellees' property at the expense of the appellant's concomitantly diminished property. Because of the early relocation of the creek and the description of the property in their deed, the appellees believed that they owned all the land east of the center of the creek, as it is physically located, to the street. Consequently, while they did not enclose the disputed strip of land, at all times they used, improved and maintained it in a normal manner as an integral part of their backyard.
The trial court, in deciding the adverse possession claim, felt itself bound to apply the case of Seddon v. Harpster. In Seddon, the supreme court decided a case much like the one before us. The mistaken boundary in Seddon was a county-maintained road instead of a creek. Further, the disputed strip of land was substantially enclosed by the party claiming adverse possession. Like the appellees' *1329 deed here, the deed's description in Seddon did not provide the precise description of the entire parcel including the disputed portion. The supreme court was called upon to construe and retroactively apply a revised adverse possession statute, chapter 74-382, Laws of Florida, which was passed by the legislature immediately after the supreme court decision in Meyer v. Law, 287 So.2d 37 (Fla. 1973). Under Meyer, adverse possession under color of title could "only arise where the claimant had `paper' title accurately describing the disputed property." Seddon, 403 So.2d at 411 (emphasis in original). Explaining the change in the law that the legislative amendment had worked, the court said:
By combining the two preceding sections, [former 95.16 and 95.17] the new statute clearly states that one does not have to have paper title correctly describing the disputed property as long as that area is contiguous to the described land and "protected by a substantial enclosure." § 95.16, Fla. Stat. (Supp. 1974).
Id. (emphasis in original). The court's reference to "protected by a substantial enclosure" was necessarily a reference to subsection 2(b) of the revised statute because the facts showed that the disputed strip had been substantially enclosed by Ms. Seddon. Ms. Seddon did not, however, prevail on her claim of adverse possession because the supreme court refused to apply the revised statute retroactively. Although she had sufficient, if not perfect, paper title, she had not been in possession of the enclosed strip for the statutorily required seven years from the effective date of the revised statute, July 1, 1975.
Unlike Seddon, the facts presented in the instant case place this case not under subsection 2(b) but under subsection 2(c) of this statute:
When, although not enclosed, it has been used for the supply of fuel or fencing timber for husbandry or for the ordinary use of the occupant.

(Emphasis added.) Despite this difference, Seddon is controlling authority for the proposition that absolutely accurate paper title is not necessary when making a claim for adverse possession regardless of the subsection under which the adverse possession claim is made. The appellees have at least as colorable a title as that found sufficient in Seddon. Also, like Ms. Seddon, they have additionally fulfilled one of the four possible criteria of 95.16(2), in this case subsection 2(c), because the evidence is clear that they have used the disputed strip for their own ordinary use as a backyard in their good faith belief that they owned the land. Finally, and unlike Ms. Seddon, they have proven their fulfillment of the statutory criteria for the necessary length of time. Therefore, the trial court correctly applied the law discussed in Seddon to the facts of this case.
Affirmed.
RYDER, A.C.J., and DANAHY and ALTENBERND, JJ., concur.
NOTES
[*] The appellant purchased and took possession of her property in 1972; the appellees in 1968. By then, Allen's Creek was, and is now, bounded by a seawall on both sides.