PETERSON, Judge.
Eula Swann appeals a judgment in favor of her neighbors William W. Seton, Jr., and G. Jewel Seton that denied her request for possession of a portion of her subdivision lot that is occupied by the Setons. The judgment specifically found that the Setons had adversely possessed a narrow strip of land along the east boundary of and constituting *936 part of Lot 25, record title to which was owned by Swann. The judgment further states that Swann was not entitled to relief because the Setons adversely possessed the lands for the requisite period of time and met the requirements of section 95.16, Florida Statutes.
Swann and her now deceased husband acquired Lot 25 in 1964. The Setons acquired the adjoining Lot 24 in 1982. The location of the boundary line between the two lots was erroneously shown on surveys prepared in 1959, 1972, 1976 and 1984. The Setons acquired from someone a copy of one of the erroneous surveys when they purchased Lot 24 and subsequently made improvements based upon the survey. In 1984 Swann learned of the Setons’ plans to build a shed adjacent to the property line shown on the erroneous survey and protested. In order to keep peace, the Setons commissioned a 1984 survey that mirrored the previous erroneous surveys and supported the Setons’ belief that their backyard extended up to Swann’s fence. The Setons built the improvements in reliance on the survey.
Swann’s fence had been constructed approximately along the boundary line depicted on the four erroneous surveys. She testified, however, that she had known that her fence was erected inward of her property line. In 1970 she provided a copy of one of the erroneous surveys to the fence builders and instructed them to place the fence on her property line. They misplaced the newly constructed fence and Swann made them move it. Their second attempt was also in-, correct, but, according to Swann, she did not make them correct it again, even though she was aware of the problem.
Apparently, nothing more was said about the boundary problem until it arose in 1992 when erosion caused Swann’s seawall to collapse. It is not clear why this event caused the issue to be renewed, but presumably it arose from Swann’s desire to run the new seawall to the true boundary line between Lots 24 and 25. A new 1992 survey showed that the previous surveys relied upon by the Setons were incorrect. The parties stipulated that this new survey, and a 1951 survey that apparently had been rediscovered, were accurate and ■ conformed to the subdivision plat.
The trial court’s ruling that the Setons had established adverse possession of the disputed lands pursuant to section 95.16, Florida Statutes (1991), is erroneous and we reverse.
Section 95.16, Florida Statutes (1991), the version of the statute applicable to the facts of this case, provides:
95.16 Real property actions; adverse possession under color of title.—
(1) When the occupant, or those under whom he claims, entered into possession of real property under a claim of title exclusive of any other right, founding the claim on a written instrument as being a conveyance of the property, or on a decree or judgment, and has for 7 years been in continued possession of the property included in the instrument, decree, or judgment, the property is held adversely.... Adverse possession commencing after December 31, 1945 shall not be deemed adverse possession under color of title until the instrument upon which the claim of title is founded is recorded in the office of the clerk of the circuit court of the county where the property is located.
(2) For the purpose of this section, property is deemed possessed in any of the following cases:
(a) When it has been usually cultivated or improved.
(b) When it has been protected by a substantial enclosure. All land protected by the enclosure must be included within the description of the property in the written instrument, judgment, or decree. If only a portion of the land protected by the enclosure is included within the description of the property in the written instrument, judgment, or decree, only that portion is deemed possessed.
(c) When, although not enclosed, it has been used for the supply of fuel or fencing timber for husbandry or for the ordinary use of the occupant.
(d) When a known lot or single farm has been partly improved, the part that has not been cleared or enclosed according to the usual custom of the county is to be *937 considered as occupied for the same length of time as the part improved or cultivated.
Application of this adverse possession with color of title statute requires a two-step analysis. First, subsection one requires that the real property in question be described in a written instrument recorded in the official records of the county. Next, the subsection requires that the real property in question be possessed continuously for a period of seven years. Both requirements must be met in order for one relying on the statute to acquire title through adverse possession by color of title. Subsection two merely describes what the legislature regards as possession of the property in question. In the instant case, it is not necessary to decide whether the Setons had possession because the requirement that the lands be described in a written instrument has not been met. The Setons’ acquiring deed describes no portion of Swann’s Lot 25; it describes only the adjoining lot 24.
The Setons argue that their claim of adverse possession by color of title is supported by Seddon v. Harpster, 403 So.2d 409 (Fla.1981). Earlier versions of section 95.16 were reviewed by the Florida supreme court in Meyer v. Law, 287 So.2d 37 (Fla.1973) and in Seddon. In both Meyer and Seddon, the contested lands were protected by a substantial enclosure, a fence. In Meyer, a 1973 case, the predecessor of section 95.16(2)(a) was set forth in a separate statute, section 95.17, Florida Statutes (1971). Subsection (2) of section 95.17 provided that land is deemed possessed and occupied, inter alia:
Where it has been protected by a substantial enclosure. All contiguous land protected by such substantial enclosure shall be deemed to be premises included within the written instrument, judgment, or decree, within the purview of § 95.16_
The supreme court read the above subsection in pari materia with former sections 95.16, 95.18 and 95.19 to provide that:
[Pjersons who claim land adversely under a paper title relating to a certain area, and who fence in or cultivate an area beyond that which is described in the paper title, but who do not pay taxes on the additional area, can secure good title by adverse possession only to the portion of land described by the deed, decree or other written instrument of record.
Meyer at 40. The court expressed its belief that “in enacting the foregoing subsection, the Legislature intended to provide that, where one has color of title to a larger area than is fenced or cultivated, and he pays no taxes on any of the land described in the title, he may acquire title by adverse possession only to that portion of land shown on the paper title which he actually fences or cultivates.” 287 So.2d at 40.
Shortly after Meyer, the legislature revised the adverse possession statutes. Ch. 74-382, §§ 11 and 12, Laws of Florida. This revision combined sections 95.16 and 95.17 and renumbered and reworded section 95.-17(2) as section 95.16(2)(b). Section 95.-16(2)(b) (Supp.1974) provided property is deemed possessed:
When it has been protected by a substantial enclosure. All contiguous land protected by the enclosure shall be property included within the written instrument, judgment, or decree, within the purview of this section.
In Seddon, a 1981 case, the supreme court interpreted this revision to be a substantive change in the law:
By combining ... sections [95.16 and 95.17 (1973) ], the new statute clearly states that one does not have to have paper title correctly describing the disputed property as long as the area is contiguous to the described land and “protected by a substantial enclosure.” § 95.16, Fla.Stat. (Supp. 1974).
403 So.2d at 411 (emphasis in original).
After Seddon, the current version of section 95.16(2)(b) was enacted by Chapter 87-194, Section 1, Laws of Florida. The current version specifically notes that “[i]f only a portion of the land protected by the enclosure is included within the description of the property in the written instrument, judgment, or decree, only that portion is deemed possessed.” One has only to compare the pre-1974 language with the current version of section 95.16(2)(b) to reach the conclusion that the legislature preferred the result in Meyer and embodied it in the current version of the statute. One may fairly conclude that in doing so the legislature intended to super *938 sede the holding in Seddon that allowed enclosed lands contiguous to the land described in the written instrument to be acquired by adverse possession without payment of taxes on the lands.
The Setons, however, argue that since Swann is the one who erected the fence, subsection (2)(b) is not applicable. Instead, the Setons assert, since they used the disputed strip for their ordinary use, subsection (2)(c) should be interpreted under Seddon to perfect title under adverse possession with color of title.
Seddon does not support the Setons’ claim. In the first place, section (2)(c), like section (2)(b), describes possession, not title and, as stated above, it is not necessary to inquire whether the Setons had possession of the disputed land since they do not have title to it. Second, as noted above, Seddon has been effectively overruled by the legislature. Third, nothing in Seddon implies that it should be applied to cases other than those in which the claim of adverse possession is based upon substantial enclosure of the disputed land. In Seddon the court specifically referred only to lands “protected by a substantial enclosure.” Seddon at 411.
We are not unmindful of Turner v. Valentine, 570 So.2d 1327 (Fla. 2d DCA 1990), upon which the Setons rely. In Turner the district court affirmed the trial court’s application of the Seddon interpretation of section 95.16(2)(b) to section 95.16(2)(c). We disagree with Turner for the reasons stated above and note that the Seddon court was guided by its understanding of the legislature’s intent in enacting the 1974 version of subsection 95.16(2)(b).[1] Seddon neither holds, nor does subsection 95.16(2)(c) evince a legislative intent, that adverse possession by color of title can be accomplished by ordinary and continuous use of contiguous property.
The current version of section 95.16(2)(b) is more in line with the realities of ownership of subdivision lots where fences or other improvements are regularly constructed to promote security and privacy. The improvements often are not precisely located by installers and homeowners do not ordinarily incur the significant expense of purchasing a survey. If such errors in installation could result in loss of title to portions of lots, many boundaries in a subdivision would eventually be altered from those shown by the plat. In the instant case, both of the parties were misled as to the exact location of the boundary line by the surveyors. Each intended to occupy only the land conveyed by their respective deeds. The continuing errors of the surveyors should not result in the loss or gain of property by either neighbor.
We hold that adverse possession by color of title under section 95.16 (1991) requires not only possession in a manner described in subsection (2), but also that the property claimed be described in the recorded instrument upon which the claim of title is founded. The title to property possessed but not described in the recorded instrument relied upon for color of title cannot be perfected pursuant to section 95.16.
The judgment finding that the Setons have gained title to a portion of Lot 25 owned by Swann is vacated and we remand to the trial court for further proceedings consistent with this opinion.
REVERSED and REMANDED.
HARRIS, C.J., and W. SHARP, J., concur.

. Section 95.16(2)(b), Fla.Stat. (1974) stated: "... All contiguous land protected by the enclosure shall be property included within the written instrument, judgment, or decree, within the purview of this section...."