# Third District Court of Appeal

## State of Florida

Opinion filed September 9, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-3044
Consolidated: 3D13-3036
Lower Tribunal No. 10-1233-K

_____

**Ann M. Dadd,**
Appellant,

vs.

**Richard Houde,**
Appellee.

Appeals from the Circuit Court for Monroe County, David Audlin, Jr., Judge.

Horan, Wallace & Higgins and R. Bruce Wallace (Key West), for appellant.

Wayne LaRue Smith and Brett Tyler Smith (Key West), for appellee.

Before SHEPHERD, LAGOA and LOGUE , JJ.

SHEPHERD, J.,

This is a boundary dispute involving a strip of land approximately six and one-half feet wide and seventy-nine and one-half feet long. The strip is contiguous to the parcel containing Ann Dadd's home and has been enclosed, along with the rest of the Dadd property, by a substantial fence since 1976 or earlier. However, the strip is within the legal description of the property owned by her next-door neighbor, Richard Houde. The Dadd property is located at 701 Catherine Street, Key West, Florida, and the Houde property is located at 703 Catherine Street. Dadd acquired the property in 1989 by warranty deed from the Estate of one Richard Wood. Houde acquired his property by warranty deed in 2001.

In 2010, as Dadd undertook improvements on the fence, Houde contested the placement of the fence and the location of the property line. Dadd then filed suit to quiet title of the disputed strip by adverse possession up to the fence line, pursuant to the 1974 version of section 95.16 of the Florida Statutes. Houde counterclaimed to eject Dadd from the disputed strip on the strength of the written conveyance of the property he received from his predecessor in interest in 2001, which included the disputed strip within the legal description. After a bench trial, the court held in favor of Houde on the strength of his long-standing title, and entered an order of ejectment of Dadd from the disputed property. We find the trial court misapplied the statute.

## ANALYSIS

Section 95.16, as it appears today in the Florida Statutes, would compel affirmance. See Seton v. Swann, 650 So. 2d 35, 37-38 (Fla. 1995) (holding that the "first step" necessary to prove a claim of adverse possession without payment of taxes on the land is "an instrument upon which the claim of title is founded . . . recorded in the official county records [which] describe[s] the disputed property."). Dadd does not dispute that principle. Rather, she redirects us to the earlier version of section 95.16, pursuant to which she contended below and continues to contend here that title to the disputed strip vested in Wood and subsequently passed to her. That version, adopted by the state legislature as Chapter 74-382, §§ 11-12, at 1212-13, Laws of Florida (1974), effective January 1, 1975, appeared in consolidated form in the 1974 Supplement to the Florida Statutes.[1] The chapter law, as consolidated in 1974, read as follows:

**95.16 Real property actions; adverse possession under color of title. –**

(1) When the occupant, or those under whom he claims, entered into possession of real property under a claim of title exclusive of any other right, founding the claim on a written instrument as being a conveyance of the property, or on a decree or judgment, and has for seven years been in continued possession of the property included in the instrument, decree, or judgment, the property is held adversely. If

---

[1] Section 95.17, Florida Statutes (1974 Supplement), states that the section was "Transferred to s. 95.16 and amended by s. 12, ch. 74-382, effective January 1, 1975." The consolidation was not dictated by the state legislature. It appears the consolidation was done by the Statutory Revision and Indexing Division of the Joint Legislative Management Committee, a legislatively created committee empowered at the time to "transfer" any "section, chapter or law . . . from one location to another." See § 11.242(5)(e), Fla. Stat. (1973).

the property is divided into lots, the possession of one lot shall not be deemed a possession of any other lot of the same tract. Adverse possession commencing after December 31, 1945 shall not be deemed adverse possession under color of title until the instrument upon which the claim of title is founded is recorded in the office of the clerk of the circuit court of the county where the property is located.

(2) For the purpose of this section, property is deemed possessed in any of the following cases:

(a) When it has been usually cultivated or improved.

(b) When it has been protected by a substantial enclosure. All contiguous land protected by the enclosure shall be property included within the written instrument, judgment, or decree, within the purview of this section. . . .

Ch. 74-382, §§ 11-12, at 1212-13, Laws of Fla. (1974). Although one might be forgiven for concluding otherwise based upon a plain reading of the consolidated statute, the Florida Supreme Court, after 1974, construed the statute to mean "one does not have to have paper title correctly describing the disputed property as long as that area is contiguous to the described land and 'protected by a substantial enclosure.'" Seddon v. Harpster, 403 So. 2d 409, 411 (Fla. 1981) (citing § 95.16, Fla. Stat. (Supp. 1974)).

Unrebutted testimony shows that the fence enclosed the disputed strip of land as far back as 1976, during Richard Wood's ownership of 701 Catherine Street. The fence continued in place after Dadd acquired her title in 1989. Section 95.16 did not require a written instrument describing the disputed property to establish color of title until 1987. See Ch. 87-194, § 1, at 1255, Laws of Fla. (1974); Seton, 650 So. 2d at 37-38. By 1983, and certainly well before 1987,

4

Richard Wood had met all of the requirements of section 95.16 as construed by the Florida Supreme Court. Wood held lawful title to the property against all the world by adverse possession, just as if it had been described and included in the deed he received from his predecessor. This was so even if, as alleged by Houde, Dadd knew at the time she purchased the property that Wood did not have paper title to the strip. Similarly, Dadd's efforts after purchase to "cure" the paper title deficiency by a series of corrective quitclaim deeds from Wood are irrelevant to the outcome of the case.

The reason is that the possessor's burden in an adverse possession case, albeit by a heightened clear and convincing standard, is to prove only that the property was possessed "under claim of right or color of title, and must have been actual, open, visible, notorious, continuous and hostile to the true owner and to the world at large." See Douglass v. Aldridge, 105 So. 145, 146 (Fla. 1925). If proven, then title to the disputed parcel vests as a matter of law in the possessor and his successors. See Birtley v. Fernandez Co., 392 So. 2d 29, 291-92 (Fla. 1980) ("[W]here an occupant of property under color of title openly and notoriously is in continuous actual possession of property in opposition to the rights of the true owner for a period greater than seven years, then he is holding the property adversely. [internal citation omitted]. Such adverse possession of real property causes real title of the property to **vest in the possessor and his**

5

**successors**."   .) (emphasis added).   Being the lawful successor to Wood by warranty deed in 1989, Dadd succeeded to Wood's title in the disputed property as of the date of delivery of that deed as a matter of law.  The 1987 amendment to section 95.16 of the Florida Statutes does not change this result.  See Weingrad v. Miles, 29 So. 3d 406, 411 (Fla. 3d DCA 2010) ("Even where the Legislature has stated its intent for retroactive application [of a statute], the Florida Supreme Court has refused to apply the statute retroactively if it impairs vested rights.…").

For these reasons, we reverse and remand the final judgment of the trial court with directions to enter judgment quieting title to the disputed parcel in Dadd.

Reversed and remanded with directions.